# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | Case No. 2:09CR00002 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| | ) | By: James P. Jones |
| **COURTNEY HARRIS,** | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

*Debbie H. Stevens, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Courtney Harris, Pro Se Defendant.*

The defendant, Courtney Harris, filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2011), alleging various claims of ineffective assistance related to his criminal trial and appeal. The government has asserted that the motion is without merit, and Harris has responded, making the matter ripe for disposition. After review of the record, I conclude that the § 2255 motion must be denied.

I

Harris was charged in this court with ten counts of indecent exposure, in violation of Va. Code Ann. § 18.2-387 (2009), imposed through the Assimilative Crimes Act ("ACA"), 18 U.S.C.A. § 13 (West 2000). Specifically, the Indictment

charged that on ten occasions in 2008 and 2009, while an inmate at the United States Penitentiary Lee County ("USP Lee"), located in this judicial district, Harris "did make an obscene display and expose his person and the private parts thereof in a place where others were present." (ECF No. 2.) Harris pleaded guilty to all ten of these misdemeanor charges without a written plea agreement.

Harris' advisory sentencing range was calculated under U. S. Sentencing Guidelines Manual ("USSG") § 2X5.2, with a Total Offense Level of 11, taking into account a three-level increase because the victims of the offenses were officials and a two-level reduction for acceptance of responsibility. Harris had a Criminal History Category of V, resulting in an advisory guideline sentencing range of 24 to 30 months imprisonment.

I conducted a sentencing hearing on August 19, 2009. The day before the hearing, the government filed a Motion for Upward Variance, arguing that the guideline sentencing range substantially underrepresented the nature and circumstances of the offense and the history and characteristics of the defendant. In support of the motion, the government offered evidence that Harris had acquired approximately 49 prison disciplinary infractions for inappropriate sexual behavior, along with numerous other infractions, including covering his cell door window, refusing to obey orders, insolence with staff, assaulting staff without serious injury, destroying property worth more than $100, refusing work assignments, refusing to

participate in impulse control classes, lying or falsifying statements, being in unauthorized areas, and interfering with count procedures. Counsel for the government also argued that Harris has the capacity to control his actions and avoid the behavior for which he was charged, as evidenced by the fact that he went for almost two months after the Indictment issued without committing additional indecent exposure infractions. Defense counsel argued for a sentence within the guideline range, based on factors discussed later in this opinion.

After hearing the parties' arguments, I granted the government's motion and applied an upward variance, sentencing Harris to a total of 60 months imprisonment. I explained my sentencing decision in a written opinion a few days later. *United States v. Harris*, No. 2:09CR00002, 2009 WL 2762157 (W.D. Va. Aug. 27,2009). In support of the upward variance, I relied on these facts, among others: (1) Harris is capable of controlling his behavior; (2) other administrative sanctions for the same behavior had failed to deter Harris from further violations; (3) this criminal prosecution alone was not sufficient to deter Harris from engaging in similar misconduct with one of his victims during the period between his guilty plea and sentencing; and (4) Harris showed no remorse or empathy for his victims and took pleasure in their humiliation and his own exploits.

Harris appealed his sentence, and the United States Court of Appeals for the Fourth Circuit affirmed. *United States v. Harris*, 390 F. App'x 292 (4th Cir. 2010) (unpublished).

In his § 2255 motion, Harris asserts that the attorneys appointed to represent him provided ineffective assistance of counsel. I construe Harris' submissions as alleging that his trial counsel (an assistant Federal Public Defender) was ineffective because she: (Claim A-1) failed to file a motion for a bill of particulars; (Claim A-2) failed to file a pre-trial motion to dismiss the Indictment as duplicitous; (Claim A-3) failed to move to withdraw the defendant's guilty plea and failed to object to the government's Motion for Upward Variance or to move for an extension of time to defend against it; (Claim A-4) failed to uphold American Bar Association Standards for Criminal Justice ("ABA Standards") during the pretrial and sentencing phases; and (Claim A-5) failed to argue certain mitigating circumstances. In a letter that I construed and granted as a Motion to Amend, Harris alleged that trial counsel was ineffective by failing to argue: (Claim A-6) that the upward variance was unconstitutional, because the defendant was not found guilty of the charges and because his cellmate took responsibility for the criminal conduct; (Claim A-7) that the defendant should have been moved to another prison facility because USP Lee staff were biased and conspired against

him; and (Claim A-8) that the officer who served the disciplinary charges on Harris was required to advise him of his *Miranda* rights.

I also construe Harris' motion as alleging that appellate counsel provided ineffective assistance on appeal because he: (Claim B-1) failed to argue that the upward variance was inappropriate in light of *United States v. Booker*, 543 U.S. 220 (2005); (Claim B-2) failed to argue certain mitigating circumstances; (Claim B-3) failed to uphold ABA Standards; and (Claim B-4) failed to file a petition for a writ of certiorari.

## II

In order to prove that counsel's representation was so defective as to require reversal of the conviction or sentence, Harris must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, Harris must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. *Id.* at 687-88. Here, Harris must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

Second, to show prejudice, Harris must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.* at 694-95. When a criminal defendant alleges that counsel's pretrial error led him to enter an invalid guilty plea, he may show prejudice by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). If it is clear that the defendant cannot satisfy one aspect of the *Strickland* standard, the court need not inquire whether he has satisfied the other aspect of that standard. *Strickland*, 466 U.S. at 697.

## A. TRIAL COUNSEL'S REPRESENTATION.

### 1. No Bill of Particulars Warranted.

Requesting a bill of particulars "is a defendant's means of obtaining specific information about charges brought in a vague or broadly-worded indictment." *United States v. Dunnigan*, 944 F.2d 178, 181 (4th Cir. 1991), *rev'd on other grounds,* 507 U.S. 87 (1993). No such bill is warranted, however, where the indictment is sufficiently detailed to allow the defendant to prepare his defense and plead double jeopardy against any future prosecution for the same offense conduct. *Id.* at *181* (finding indictment sufficient where it described place and "time frame of the activity," the statutes violated, and "tracked the statutory language defining the offense").

The Indictment against Harris satisfied this specificity standard. It cited the statutes he was charged with violating and tracked the statutory language of the Virginia law describing the offense conduct. The Indictment also listed the dates of the offense conduct for each count, all but one of which were different, and specifically indicated that the offense conduct charged in Count Six occurred on the same day as the conduct charged in Count Five, but on another occasion. Furthermore, the government provided Harris and his counsel with extensive discovery documentation, including copies of all prison incident reports, which stated the time, place, circumstances, and staff members present for each of the ten incidents charged. *See United States v. Soc'y of Indep. Gasoline Marketers of Am.*, 624 F.2d 461, 466 (4th Cir. 1979) (finding that bill of particulars not appropriate where government supplements indictment with extensive discovery).

In light of the specific information provided in the Indictment itself and the discovery materials provided, trial counsel could reasonably have believed that she and Harris could ably prepare a defense or argue double jeopardy against future prosecutions with the documentation already available. Harris does not point to any particular aspect of the case that he and counsel did not learn through the materials provided. Accordingly, I cannot second-guess counsel's reasonable strategic decision not to move for a bill of particulars. *Strickland,* 466 U.S. at 689.

Because Harris thus fails to establish deficient performance, his ineffective assistance claim fails, and I will deny relief as to Claim A-1.

2.  No Grounds to Dismiss the Indictment.

The ACA authorizes federal officials to apply state criminal statutes to any act committed on federal property, if the act, "although not made punishable by any enactment of Congress, would be punishable if committed . . . within the jurisdiction of the State."  18 U.S.C.A. § 13(a).  The purpose of the ACA is to "fill gaps in the federal criminal law" such that conduct on federal land that would violate state law does not go unpunished simply because no federal law prohibits such conduct.  *United States v. Statler*, 121 F. Supp. 2d 925, 926 (E.D. Va. 2000); *see also United States v. Fox*, 60 F.3d 181, 183 (4th Cir. 1995) ("[T]he United States may invoke the [ACA] to prosecute an offense under state law only when there is no enactment of Congress that punishes the offender.").

Relying on the *Statler* decision, Harris asserts that counsel should have moved to dismiss the Indictment before trial, because his offense conduct is covered by a National Park Service regulation, 36 C.F.R. 2.34, thereby precluding his conviction under the ACA.  He is mistaken.

Section 2.34, the regulation applied in *Statler*, prohibits "engage[ing] in a display or act that is obscene" while on any "lands and waters within a park area that are under the legislative jurisdiction of the United States."  36 C.F.R.

§ 2.34(a)(2), (b). While the actions for which Harris was charged under the ACA may qualify as engaging "in a display or act that is obscene" § 2.34(a)(2), Harris performed these actions within the confines of a federal prison, not on the federal park lands or waters covered by § 2.34. He fails to point to any federal criminal statute prohibiting indecent exposure in the presence of federal prison officials within a federal prison. Accordingly, he offers no ground on which counsel could have argued for dismissal of the Indictment on grounds that the ACA could not apply to fill a gap in federal law and punish his indecent exposure conduct by application of Virginia law.

Harris also claims that the Indictment was "duplicitous" because it "charged 10 distinct offenses in a single count." (ECF No. 58, p. 7.) This statement completely mischaracterizes the Indictment, which charged ten separate counts on a single page. Moreover, the counts against Harris are all based on conduct that occurred at different times. "It is well-settled that a defendant may be charged and prosecuted for the same statutory offense multiple times when each prosecution is based on discreet acts that each constitute a crime." *United States v. Goodine*, 400 F.3d 202, 208 (4th Cir. 2005). Harris fails to demonstrate that counsel had any ground on which to move for dismissal of the Indictment as duplicitous, and as such, the failure to make such a meritless motion cannot be deemed deficient performance.

For the stated reasons, the claims of ineffective assistance regarding the Indictment fail under *Strickland*. Therefore, I will deny relief as to Claim A-2.

3. No Deficiency in Pretrial Investigation.

Harris asserts that trial counsel's representation fell below ABA standards because she did not promptly investigate the circumstances of the charged offenses and make efforts to obtain access to the prosecution's evidence so as to discover unspecified factual discrepancies sufficient to warrant dismissal of some counts.[2] The government provides evidence, however, that starting within days of being appointed to represent Harris, trial counsel received from the government, and reviewed, extensive information about the circumstances of the offenses.[3] Harris fails to point to any particular record or piece of evidence, in addition to these materials, that counsel could have discovered with additional investigation in support of a motion to dismiss any portion of the Indictment. Because he fails to demonstrate that counsel's representation was deficient or prejudicial, his ABA

---

[2] To prove a constitutional claim of ineffective assistance, however, Harris must satisfy the elements of *Strickland*. Simply asserting a technical violation of an ABA practice rule is insufficient support for such a claim and cannot provide a ground for relief under § 2255.

[3] The government provided counsel with all ten incident reports, prison discipline information and criminal sentencing information on Harris, his profile, administrative detention orders, copies of discipline reports for similar past behavior, Harris' written statements, a video recording, and psychological reports. She also received a copy of the grand jury transcript and access to Harris' prison files at USP Lee.

standards claim fails under both facets of *Strickland*.  I will deny relief as to Claim A-4.

4.  No Ground for Withdrawing the Guilty Plea.

Under Rule 11(d)(2) of the Federal Rules of Criminal Procedure, the court may allow a defendant to withdraw his guilty plea before sentencing if "the defendant can show any fair and just reason" for doing so.  The defendant has no absolute right to withdraw a guilty plea, however.  *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991).  In fact, a properly conducted Rule 11 colloquy creates a strong presumption that the guilty plea is valid and, therefore, not withdrawable.  *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc).  Courts should address six factors in deciding a defendant's motion to withdraw his guilty plea, as follows: (1) whether the defendant offers any credible evidence that he did not enter the plea knowingly or voluntarily; (2) whether he credibly asserts his legal innocence; (3) the length of time between the entry of the plea and the filing of the motion to withdraw the plea; (4) whether the defendant had close assistance of competent counsel with regard to the guilty plea; (5) whether granting the withdrawal would prejudice the government; and (6) whether withdrawal would inconvenience the court or waste judicial resources.  *See Moore*, 931 F.2d at 248.

Harris asserts that he pleaded guilty based on his understanding that he would receive a sentence between 24 and 30 months, the sentencing range applicable to him under the advisory sentencing guidelines. He asserts that when the government moved, one day before sentencing, for an upward variance from that guideline range, counsel should have moved to withdraw the guilty plea.

First, the record belies Harris' claim that he entered the plea with the belief it would guarantee him a sentence within the guideline range. During the plea colloquy, I asked Harris whether anyone had promised him anything that caused him to decide to plead guilty, and he answered, "No." (Plea Tr. 5, May 7, 2009.) I also advised Harris that the maximum penalty for each of the ten charges was up to one year in prison, and he affirmed his understanding. I also asked Harris, "Do you also understand that your sentence may be different from any estimate that your lawyer may have given you?" He answered, "Yes." (*Id.* 7.) Other than his alleged mistaken belief about how long his sentence could be, Harris offers no evidence that he entered his plea involuntarily or without fully understanding the potential consequences of pleading guilty. Thus, he fails to satisfy the first of the five factors listed in the *Moore* decision.

Second, Harris offers no credible evidence that he is innocent of the conduct charged in the Indictment. At the close of the plea hearing, when I asked Harris if he disputed any of the facts offered by the government in support of the guilty

plea, Harris responded, "No," and thereafter stated his intention to plead guilty to the charges. (*Id.* 12.)

Third, Harris had knowledge of the information offered in support of an upward variance well before the government's motion was filed. All the information offered in support of the government's motion had been disclosed in discovery, and Harris was clearly informed at the plea hearing that he faced up to a year of prison time on each count. Moreover, the Presentence Investigation Report ("PSR") noted that an upward variance might be warranted. Yet, Harris waited three months after the plea hearing to inquire about withdrawing his guilty plea. Such delay weighs against him on the third *Moore* factor.

Fourth, for the reasons already discussed, Harris fails to demonstrate that counsel provided deficient representation in the pre-guilty plea stages of the case. In fact, during the plea colloquy, when I asked whether he was "fully satisfied" with his attorney's representation, Harris answered, "Yes." Thus, the fourth *Moore* factor weighs against Harris.

The government does not argue that the fifth and sixth *Moore* factors weigh in its favor or otherwise demonstrate that allowing Harris to withdraw his plea would have been prejudicial to the government's case or inconvenient to the court. However, I find no indication that these factors weigh in Harris' favor. Moreover, considering the *Moore* factors as a whole, they do not provide Harris with a "fair

and just" reason for withdrawing his guilty plea. Trial counsel's decision not to pursue an unsupported motion for withdrawal of the plea cannot be deemed deficient or prejudicial performance under *Strickland*. Accordingly, I will deny relief as to Claim A-3 regarding withdrawal of the guilty plea.

5. Adequate Defense at Sentencing.

In the alternative to withdrawing the guilty plea in response to the motion for upward variance, Harris faults counsel for failing to seek a continuance. Harris asserts vaguely that if only counsel had sought additional time to prepare a defense, to file a written response to the motion, and to develop mitigation evidence, the sentencing outcome would have been different. I disagree.

I cannot find that counsel's representation with regard to sentencing fell below an objective standard of reasonableness. As stated, counsel had earlier received all the information the government offered in support of the motion. Counsel had moved for a psychological evaluation of Harris, and at sentencing, had directed the court's attention to that report and to the fact that all but one of Harris' offenses had occurred in his "home" within the prison. Moreover, contrary to prosecution arguments that Harris could control his behavior, counsel asserted that Harris' recent behavior suggested he had self-control problems and asked that the court recommend Harris receive sex offender treatment. I find that counsel was prepared to, and did argue that Harris receive a sentence within the guidelines.

Harris asserts that counsel should have made additional arguments at sentencing regarding the following issues: (a) the parties had stipulated that Harris was capable of controlling his behavior; (b) Harris had asked prison mental health professionals and the court for help in changing his behavior; (c) through the prison disciplinary system, Harris had already been penalized by prison officials with the loss of 410 days of good conduct time, resulting in a longer term of confinement; (d) Harris had not been proven guilty of the offense conduct and a cellmate had confessed to it; and (e) Harris received so many charges for this type of misbehavior, because the prison staff was biased and conspired against him. Harris claims that if counsel had raised these arguments, the court might have sentenced him within the guidelines.

As stated, counsel did cover some of these issues. Counsel argued regarding Harris' ability to control his behavior and relied upon the psychological evaluation report, which included information about Harris' requests for sex offender treatment while in prison. Harris fails to demonstrate that counsel's strategic choices regarding presentation of this information were professionally unreasonable.

Moreover, counsel could reasonably have believed the other issues Harris now presents might have an adverse impact on the defense argument. For example, the 410 days of lost good time carried little weight in the face of evidence

that dozens of past disciplinary penalties had not deterred Harris from continuing his indecent exposure behavior.[4]  Similarly, after Harris pleaded guilty to misconduct supported by eye witness accounts, counsel had no viable argument at sentencing attempting to question the government's proof of that conduct, to suggest that Harris' cellmate had committed the conduct or that prison staff had falsified the charges in a conspiracy against Harris, or to challenge the admissibility of Harris' own statements about his conduct.[5]

Because Harris fails to point to any persuasive mitigating evidence that counsel could have developed if granted a continuance, and fails to demonstrate any reasonable probability that such evidence would have resulted in a different

---

[4]     Counsel had no viable double jeopardy argument related to the lost good conduct time, because double jeopardy principles do not preclude an inmate from being sanctioned by the Bureau of Prisons and criminally sentenced for the same conduct.  *See Patterson v. United States*, 183 F.2d 327 (4th Cir. 1950); *see also United States v. DeVaughn*, 32 F. App'x 60, 61 (4th Cir. 2002) (unpublished) (finding that *United States v. Halper*, 490 U.S. 435 (1989), does not abrogate *Patterson* and holding that "prison disciplinary sanctions do not preclude subsequent criminal punishment for the same conduct under the Double Jeopardy Clause of the Fifth Amendment because Congress intended disciplinary proceedings to be civil in nature"); *United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2008) (holding that "[e]very circuit court of appeals to consider this question has given the same answer: The Double Jeopardy Clause was not intended to inhibit prison discipline, and disciplinary changes in prison conditions do not preclude subsequent criminal punishment for the same misconduct").

[5]     Harris complains that counsel should have raised an objection under *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), to the statements prison officials took from him in their disciplinary investigations related to his conduct.  Counsel had no grounds for such an objection.  *See Bardeau v. Meadows*, No. 7:08-cv-00486, 2008 WL 4057310, at *2 (W.D. Va. Aug. 29, 2008) (finding that constitutional procedural protections afforded to criminal defendants, including *Miranda* warning of right to remain silent, are not applicable in prison disciplinary proceedings).

outcome, the claims of ineffective assistance at sentencing fail under both prongs of *Strickland*. I will deny relief as to Claims A-3, A-5, A-6, A-7, and A-8.

## B. APPELLATE COUNSEL'S REPRESENTATION.

To prove that appellate counsel provided ineffective assistance, as in claims concerning other stages of the proceedings, the defendant must satisfy the two-prong standard under *Strickland*: deficient performance and resulting prejudice. 466 U.S. at 687. Appellate counsel owes no constitutional duty to a client to raise on appeal every nonfrivolous issue, but may select which issues will maximize the likelihood of success. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983). To prove deficient performance, the defendant must demonstrate that "a particular nonfrivolous issue was clearly stronger than issues that counsel did present." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Harris fails to carry this burden.

### 1. No *Booker* Issue.

When I imposed the upward variance in Harris' case, I did so only after consulting the guideline range applicable to his conduct and expressly considering the factors in § 3553(a). After sentencing, I issued a written opinion setting forth the reasons for the varied sentence. On appeal, counsel asserted three grounds to vacate the sentence: first, that I failed to specify whether I was imposing an upward variance or an upward departure; second, that I failed to adequately explain a

rationale for imposing the sentence; and third, that the sentence is substantively unreasonable.

Harris now asserts that instead of the arguments raised, appellate counsel should have challenged the upward variance under *Booker*, 543 U.S. at 226. I find no reasonable probability that any such argument would have resulted in a different outcome on appeal. On Harris' appeal the Fourth Circuit held:

> the district court adequately explained its rationale for imposing the variant sentence, that the sentence was "selected pursuant to a reasoned process in accordance with law," and that the reasons relied upon by the district court are plausible and justify the sentence imposed.

390 F. App'x at 294 (citation omitted). Because the sentence calculation in Harris' case complied with the sentencing procedures set forth in *Booker*, Harris fails to demonstrate that any different argument had a greater likelihood for success on appeal than the arguments counsel chose to raise. I will deny relief as to Claim B-1.

2. No Mitigating Evidence or ABA Violations.

Harris next argues that appellate counsel, in violation of the ABA Standards, failed to develop and present mitigating evidence as part of his argument for a guideline sentence. For the reasons already discussed in addressing similar claims against trial counsel, I find no merit to Harris' arguments. I will grant the government's motion as to Claims B-2 and B-3.

3.  No Ineffective Assistance Regarding Certiorari.

Generally, a defendant has no constitutional right to the assistance of counsel to pursue a petition for a writ of certiorari in the Supreme Court.  *See Wainwright v. Torna*, 455 U.S. 586 (1982).  However, where court rules define the duties of an appellate attorney regarding certiorari, counsel's failure to comply with such rules can provide a basis for a claim under *Strickland* that counsel was ineffective.  *See United States v. King*, 11 F. App'x. 219, 220-21 (4th Cir. 2001) (unpublished); *see also* Plan of the United States Court of Appeals for the Fourth Circuit in Implementation of the Criminal Justice Act of 1964, Part V, § 2 ("CJA Plan") (October 1, 2008).

The CJA Plan requires appellate counsel to inform a defendant of his right to petition the Supreme Court for certiorari review, and to file a petition for writ of certiorari for the defendant "[i]f the defendant, in writing, so requests and in counsel's considered judgment there are grounds for seeking Supreme Court review. . . ."  CJA Plan § V.2, "Attorney's Duty to Continue Representation, Appellate Counsel."  The Fourth Circuit rule provides that, if "counsel believes that such a petition would be frivolous, counsel may file a motion to withdraw from this court wherein counsel requests to be relieved of the responsibility of filing a petition for writ of certiorari." *Id.*

On August 9, 2010, three days after the Fourth Circuit affirmed Harris' sentence on appeal, appellate counsel filed a Certiorari Status Form, notifying the court that counsel had advised Harris in writing of the right to petition the Supreme Court for certiorari and (1) that any such petition would be frivolous, (2) that counsel would move to withdraw if asked to file a certiorari petition, (3) that Harris had seven days to respond to any withdrawal motion, and (4) that Harris had a right to file a pro se certiorari petition within the statutory filing period. Counsel filed a Motion to Withdraw on September 7, 2010, advising the court that Harris had asked counsel to file a certiorari petition and that counsel believed such a petition would be frivolous. Harris did not respond to counsel's motion. On October 1, 2010, the Fourth Circuit granted the motion to withdraw, relieving counsel of any obligation to pursue a petition for certiorari on Harris' behalf. Harris failed to file a pro se certiorari petition within the statutory filing period.

The undisputed evidence indicates that counsel complied with his obligations under the CJA Plan with regard to the defendant's right to file a certiorari petition. Therefore, Harris fails to demonstrate any respect in which counsel's representation was deficient. Moreover, Harris' claims are mertiless, and Harris fails to demonstrate any reasonable probability that the outcome of his case would have been different if counsel had filed a certiorari petition. Because the

claim for ineffective assistance of appellate counsel fails under both prongs of *Strickland*, I will deny relief as to Claim B-4.


## III

In conclusion, I find that Harris fails to demonstrate any ground on which he is entitled to relief under § 2255. Therefore, I will deny the defendant's motion in its entirety.

A separate Final Order will be entered herewith.

DATED:  January 6, 2012

/s/  James P. Jones
United States District Judge